IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN P. JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 5:15-CV-024 RP |
| | § | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | § § § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant's Motion for Summary Judgment, filed July 16, 2015 (Dkt. 16)[1], Plaintiff's Motion to Strike Defendant's Affidavit, filed July 30, 2015 (Dkt. 22), Plaintiff's Motion for Summary Judgment, filed October 30, 2015 (Dkt. 53), and the responsive pleadings thereto. Also before the Court is Plaintiff's Request for Mandatory Judicial Notice, filed November 23, 2015 (Dkt. 58). Attached to this request is additional evidence in support of Plaintiff's motion for summary judgment. After reviewing the pleadings, the relevant law, and the entire file in this action, the Court issues the following order.

## BACKGROUND

Pro se Plaintiff John P. Johnson ("Johnson") alleges that Defendant Portfolio Recovery Associates, LLC, ("PRA") repeatedly accessed his consumer credit report in willful noncompliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* In February 2012, PRA sent Johnson a letter stating that it had purchased a credit card account with an outstanding balance in Johnson's name. (Pl.'s Mot. Summ. J. Ex. B, Dkt. 53.) The next

---

[1] Since Defendant filed its motion for summary judgment, Plaintiff has twice amended his complaint, adding and subsequently removing claims under the Telephone Consumer Protection Act. (Pl.'s First Am. Compl., Dkt. 36; Pl.'s Second Am. Compl., Dkt. 54.) Accordingly, Plaintiff's Second Amended Complaint is effectively identical to his Original Complaint. The Court, at the request of Defendant and without objection from Plaintiff, considers Defendant's motion for summary judgment as responsive to the Second Amended Complaint. (*See* Def.'s Notice Regarding Def.'s Mot. Summ. J., Dkt. 56.)

month, Johnson responded by disputing the account and requested that PRA send him proof of the debt. (Pl.'s Mot. Summ. J. Ex. C, Dkt. 53.) Around a year later, in March of 2013, PRA sent Johnson a letter stating that it had concluded its investigation of his complaint and decided to close his account. (Pl.'s Mot. Summ. J. Ex. D, Dkt. 53.)

Prior to this resolution, PRA, on twelve separate occasions, received information from Johnson's TransUnion consumer credit report incident to an "account review inquiry." (Pl.'s Mot. Summ. J. Ex. A, Dkt. 53.) The first account review inquiry occurred on December 21, 2012. The final account review inquiry occurred on February 28, 2013. (*Id.*) The parties dispute the exact nature of an account review inquiry, including what information is communicated by the credit reporting agency and how the inquiry is initiated.

Plaintiff Johnson believes that each time Defendant PRA initiated an account review inquiry it unlawfully accessed his consumer credit report. Johnson asserts that he "has never had any business relationship of any kind" with PRA and therefore PRA had no permissible reason to access his credit report. (Pl.'s Second Am. Compl. ¶ 11, Dkt. 54.) On the other hand, PRA claims it never accessed Johnson's credit report, but rather received "informational updates" that had no effect on his credit score. (Def.'s Resp. Pl.'s Mot. Summ. J. 2, 8, Dkt. 57.) PRA further asserts that Johnson incurred a credit card debt to a third party creditor who subsequently sold the debt to PRA. (Def.'s Mot. Summ. J. 1, Dkt. 16) Accordingly, PRA believes that, to the extent it did access Johnson's credit report, it was authorized to do so because it was accessing the report as part of an effort to collect a debt. (*Id.* 4-6.)

On July 16, 2015, Defendant PRA filed a motion for summary judgment. The motion included as an exhibit an affidavit from Tamara Bond ("Bond affidavit") who purports to be the custodian of records for PRA. (Def.'s Mot. Summ. J. Ex. A, Dkt. 16) Attached to the affidavit were six pages of business records indicating that PRA owned a consumer debt owed by Plaintiff Johnson. (*Id.*) On July 30, 2015, Plaintiff filed a motion to strike the Bond affidavit from the record. (Pl.'s Mot. Strike Def.'s Aff., Dkt. 22.) On October 30, 2015, Plaintiff filed his own

motion for summary judgment. (Pl.'s Mot. Summ. J., Dkt. 53.) The Court now considers Plaintiff's motion to strike as well as the parties' cross-motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, the court must look to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." *Id.* 56(c)(1)(a). That evidence is then viewed "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The "'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## ANALYSIS

The Court begins its analysis by looking to Plaintiff's motion to strike and then turns its attention to the parties' cross-motions for summary judgment.

A.  Plaintiff's Motion to Strike Defendant's Affidavit

Defendant PRA submits the Bond affidavit and attached business records as evidence that Plaintiff incurred a credit card debt that was purchased by Defendant from the original creditor, World Financial Network Bank. (Def.'s Mot. Summ. J. Ex. A, Dkt. 16) The Bond affidavit authenticates and attaches five pages of account notes indicating that Defendant acquired an account in Plaintiff's name from World Financial Network Bank. (*Id.* Ex. A DefApps 1-5.) The Bond affidavit also attaches a one page bill of sale indicating that Defendant purchased a large number of credit card accounts from World Financial Network Bank in September 2011. (*Id.* Ex. A DefApps 6.)

Plaintiff Johnson argues that the Bond affidavit should be struck from the record. The thrust of Plaintiff's argument is that the affiant has no "firsthand knowledge" of Plaintiff's credit card account because "she was not involved in the setup or maintenance of [the] account." (Pl.'s Mot. Strike Def.'s Aff. ¶¶ 3-4, Dkt. 22.) Plaintiff contends that because the information the affiant is seeking to verify was transmitted to Defendant from the original creditor she is not able to warrant its accuracy. (*Id.* ¶ 6.)

An affidavit or declaration used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Under Federal Rule of Evidence 803(6), a record of an act or event is admissible if: (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge, (b) the record was kept in the course of a regularly conducted business activity, (c) making the record was a regular practice of that activity, (d) all these conditions are shown by the testimony of the custodian of the records or other qualified witness, and (e) the opponent does not show that the source of information or the method of preparation indicate a lack of trustworthiness.

In her affidavit, Bond states that all the facts contained therein are based on her "personal knowledge." (Def.'s Mot. Summ. J. Ex. A, Dkt. 16.) Moreover, she attests to being "fully competent and qualified" to testify to the matters stated. (*Id.*) Bond asserts that she is the custodian of records for Defendant PRA and that she is familiar with the manner in which its records are created and maintained. (*Id.*) She further declares that the records were made at or near the time of the event or transaction being recorded by (or from information transmitted by) persons with knowledge of the event or transaction recorded. (*Id.*) She attests that the records were made and kept as a part of Defendant's regular business activity. (*Id.*)

It is true that Bond does not state that she has firsthand knowledge of the facts included in the business records attached to her affidavit. However, there is no requirement that she have firsthand knowledge of the content of the records she is authenticating. She swore to her personal knowledge of the type and manner of records kept in Defendant's normal course of business. That testimony is sufficient. The purpose of Rule 803(6) is to create an exception to the ordinary ban on the admission of hearsay by allowing the admission of certain records for without requiring a witness with firsthand knowledge of the content of the records.

Plaintiff also challenges the bill of sale attached to the Bond affidavit by arguing that the bill of sale was "for 28,892 accounts, but does not specify Plaintiff's name or identity anywhere on the document" and that the bill of sale "clearly states that [it] does not specify any warranties regarding the accuracy of the information transmitted." (Pl.'s Mot. Strike Def.'s Aff. ¶¶ 8-9, Dkt. 22.) Admittedly, the bill of sale does not specify Plaintiff's name. However, it nonetheless serves as evidence of the fact that Defendant purchased a large number of accounts from World Financial Bank, which is a fact relevant to Plaintiff's claims. The bill of sale's failure to identify Plaintiff by name speaks to its proper function and weight not its admissibility. Moreover, the bill of sale's disclaimer of warranties is a contractual agreement between Defendant and World Financial Network Bank. Per the disclaimer, the credit card accounts were sold without the guaranty provided by a warranty of title or enforceability. The relevant fact here is that the accounts were sold to Defendant, not the terms of the sale. Thus, the inclusion of the disclaimer in the bill of sale does not undermine its credibility or relevance.

Finally, Plaintiff argues that the Bond affidavit is invalid because the affiant "has not been positively identified" and the affidavit did not include the phrase "hereby declares under penalty of perjury." (Pl.'s Mot. Strike Def.'s Aff. ¶¶ 12-13, Dkt. 22.) Tamara Bond was properly identified, as evinced by the notary's oath that she had verified the identity of the affiant at the time the affidavit was sworn and signed. Further, there is no requirement that a *sworn* affidavit use the "under penalty of perjury" language. That language is only necessary to admit an unsworn

declaration. *See* 28 U.S.C. § 1746. Plaintiff cites to a case where witness statements were disallowed because they were "not sworn to *nor* [were] they made under penalty of perjury." *Schelsteder v. Montgomery County, Tex.*, 2006 WL 1117883, at *3 (S.D.Tex. 2006) (emphasis added). That case does not support Plaintiff's contention that an affidavit must be both sworn *and* made under penalty of perjury.

Plaintiff's objections to the Bond affidavit and attached records are unpersuasive. The Court concludes that the Bond affidavit is admissible under the hearsay exception for business records and therefore is appropriate for consideration as summary judgment evidence pursuant to Federal Rule of Civil Procedure 56(c)(4).

B. Cross-Motions for Summary Judgment

The Court now turns to the parties' cross-motions for summary judgment. Plaintiff raises twelve counts of willful non-compliance with the FCRA under 15 U.S.C. § 1681n.[2] Specifically, Plaintiff contends that Defendant violated the FCRA's prohibition on using or obtaining a consumer credit report without an authorized purpose. *See* 15 U.S.C. § 1681b(f). Accordingly, for Plaintiff to prevail, he must show that Defendant: (1) willfully (2) used or obtained his credit report (3) without an authorized purpose. The Court concludes that even if Defendant did access Plaintiff's credit report without authorization, Plaintiff has not presented any evidence to suggest that Defendant did so *willfully*.

To be found in willful noncompliance with the FCRA, a defendant must have "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001) (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986)). Willfulness does not require a showing of "malice or evil motive." *Id.* (quoting *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983)).

---

[2] There are two causes of action available to a plaintiff alleging violations of the FCRA: negligent noncompliance under 15 U.S.C. § 1681o and willful noncompliance under 15 U.S.C. § 1681n. Plaintiff only alleges willful noncompliance. A plaintiff who proves willful noncompliance can recover actual or statutory damages, punitive damages, costs and attorney's fees. A plaintiff who proves negligent noncompliance can recover only actual damages, costs, and attorney's fees.

However, a finding of willful noncompliance does require a plaintiff to show that the defendant made intentional "misrepresentations or concealments." *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993) (quoting *Pinner*, 805 F.2d at 1263).

The FCRA enumerates a list of purposes for which it is permissible to access a consumer credit report. One such permissible purpose is "to use the information in connection with a credit transaction involving the . . . review or collection of an account." *Id.* § 1681b(a)(3)(A). Defendant contends that to the extent it ever accessed Plaintiff's consumer credit report it did so for the purpose of collecting on Plaintiff's credit card account. Accordingly, Defendant argues that the record establishes beyond genuine dispute that it operated under the belief that it had purchased a debt owed by Plaintiff and that it therefore understood its actions to be authorized by the FCRA.

Defendant submits five pages of records indicating that it held an account in Plaintiff's name at a San Antonio address. (Def.'s Mot. Summ. J. Ex. A at DefApps 1.) The records show an outstanding balance of $5,898.50. (*Id.* at DefApps2.) Moreover, the records list both the seller and the original creditor as World Financial Network Bank (*Id.* at DefApps3.) Defendant also submits a bill of sale confirming that it purchased a large number of accounts from World Financial Bank. (*Id.* at DefApps6.) Accordingly, Defendant has submitted competent and persuasive evidence indicating that it reasonably believed it owned a credit card account with an outstanding balance owed by Plaintiff.

None of the evidence offered by Plaintiff creates a genuine dispute as to whether Defendant willfully violated the FCRA. In response to Defendant's motion for summary judgment, Plaintiff submitted his own affidavit. (Aff. Supp. Pl.'s Opp. Def.'s Mot. Summ. J., Dkt. 21.) In that affidavit, Plaintiff claims that he "has never provided express written authorization for the Defendant . . . to obtain his . . . consumer credit report." (*Id.* ¶ 3.) He also asserts that he "has never established an account of any kind with the Defendant" and that he "disputes that any alleged account is, or was ever due and owing to [Defendant.]" (*Id.* ¶¶ 2, 8.) However, these

statements are not relevant to the arguments offered by Defendant. It is permissible to access a consumer credit report in connection with collection on an account, whether or not the account holder has provided consent. *See* 15 U.S.C. § 1681b(a)(3)(A). Moreover, Defendant does not dispute Plaintiff's contention that he never opened an account with PRA. Rather, Defendant contends that Plaintiff opened an account with another creditor which it then purchased. Accordingly, Plaintiff's assertion that he has never initiated a business relationship with Defendant is immaterial. Notably, nowhere in Plaintiff's affidavit does he deny that he took out a credit card with and accrued a significant debt to the purported original creditor, World Financial Network Bank.

In support of his own motion for summary judgment, Plaintiff also submits some letters that were exchanged between the parties. The first letter was sent from Defendant to Plaintiff on February 22, 2012 and informs him that Defendant purchased his credit card account from the original creditor and that interest will continue to accrue on the account until it is paid. (Pl.'s Mot. Summ. J. Ex. B, Dkt. 53.) The notice also provides that if Plaintiff disputes the validity of the account he should notify Defendant in writing so that it can verify the debt. (*Id.*) In response, on March 14, 2012, Plaintiff sent Defendant a letter disputing the account. (Pl.'s Mot. Summ. J. Ex. C, Dkt. 53.) In that letter he claims that he has never purchased any product or service from Defendant and insists that Defendant prove the existence and validity of the debt. (*Id.*) Approximately one year later, on March 29, 2013, Defendant sent Plaintiff a letter indicating that it had concluded its investigation of the dispute and decided to close his account. (Pl.'s Mot. Summ. J. Ex. D, Dkt. 53.) The letter also states that Defendant has requested that the three major credit agencies "delete PRA's trade line for this account on [Plaintiff's] credit reports." (*Id.*) Plaintiff also submits a document with a list of dates on which Defendant initiated credit inquiries, purportedly accessing Plaintiff's credit report. (Pl.'s Mot. Summ. J. Ex. A, Dkt. 53.) The last credit inquiry occurred in February 2013. (*Id.*) Accordingly, by the time the account was

closed in February 2013, Defendant appears to have ceased accessing Plaintiff's credit report in any manner.

These letters do not provide any support for Plaintiff's contention that the alleged FCRA violation was willful. Defendant has presented persuasive evidence indicating that at the time Plaintiff's credit report was purportedly accessed its records reflected that it owned an account with an outstanding balance owed by Plaintiff. In fact, Plaintiff's own evidence indicates as much. (*See* Pl.'s Mot. Summ. J. Ex. B, Dkt. 53.) Therefore, Defendant reasonably believed that it was permitted to access Plaintiff's credit report in conjunction with its efforts to collect on an account. Even if in retrospect Defendant determined that it did not have a legitimate claim to collect from Plaintiff, the alleged violations would still not have been willful as Defendant believed at the time that it was acting in full compliance with the terms of the FCRA.

Moreover, the letters offered by Plaintiff affirm the Court's conclusion that the alleged FCRA violations were not willful. Defendant informed Plaintiff that it had purchased his account and clearly communicated how Plaintiff could dispute its validity. After receiving Plaintiff's complaint, Defendant initiated an internal investigation, closed his account, notified the relevant credit agencies, and stopped accessing information relevant to his credit. Such conduct is inconsistent with a finding that Defendant knowingly and intentionally violated the FCRA in conscious disregard for the rights of others. *See Stevenson*, 987 F.2d at 294 (overturning the district court's finding of willfulness because the defendant "did not conceal information about [the plaintiff's credit] report, investigated the disputed accounts, and attempted to resolve the complaints"); *Pinner*, 805 F.2d at 1263 (finding no willful violation even though the defendant failed to investigate a complaint adequately and did not correct inaccurate account information).

The Court finds that there is no genuine dispute of fact material to whether Defendant willfully violated the FCRA. Thus, the Court concludes that Defendant's motion for summary judgment should be granted.


## CONCLUSION

1. Defendant's Motion for Summary Judgment (Dkt. 16) is hereby **GRANTED.**

2. Plaintiff's Motion to Strike Defendant's Affidavit (Dkt. 22) is hereby **DENIED.**

3. Plaintiff's Motion for Summary Judgment (Dkt. 53) is hereby **DENIED.**

4. Plaintiff's Request for Mandatory Judicial Notice (Dkt. 58) is hereby **DENIED.**

**SIGNED** on December 14, 2015.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE